# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*In re Estate of Compton*, 2012 IL App (4th) 101002

---

| | |
|---|---|
| Appellate Court Caption | In re: the Estate of ROBERT COMPTON, Deceased, MARGARET COMPTON, Individually and as Special Administratrix, Plaintiff-Appellee, v. (No. 4-10-1002) PNEUMO ABEX CORPORATION, PNEUMO ABEX, LLC, METROPOLITAN LIFE INSURANCE COMPANY, OWENS-ILLINOIS, INC., HONEYWELL INTERNATIONAL, INC., JOHN CRANE, INC., SPRINKMANN SONS CORPORATION OF ILLINOIS, and BOSTON SCIENTIFIC CORPORATION, Defendants, and ILLINOIS CENTRAL RAILROAD COMPANY, Defendant-Appellant.–JAMES SMITH, DIANNE SMITH, MICHAEL McGOWAN, and EVELYN McGOWAN, Plaintiffs-Appellees, v. (No. 4-10-1003) PNEUMO ABEX CORPORATION, PNEUMO ABEX, LLC, METROPOLITAN LIFE INSURANCE COMPANY, OWENS-ILLINOIS, INC., HONEYWELL INTERNATIONAL, INC., and RAILROAD FRICTION PRODUCTS CORPORATION, Defendants, and ILLINOIS CENTRAL RAILROAD COMPANY, Defendant-Appellant, and JOHN MONICAL, PATRICIA MONICAL, and JOHNIE BROWN, Plaintiffs-Appellees, v. (No. 4-10-1003) PNEUMO ABEX CORPORATION, PNEUMO ABEX, LLC, METROPOLITAN LIFE INSURANCE COMPANY, OWENS-ILLINOIS, INC., and HONEYWELL INTERNATIONAL, INC., Defendants, and ILLINOIS CENTRAL RAILROAD COMPANY, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket Nos. 4-10-1002, 4-10-1003 cons. |
| Filed | January 20, 2012 |

Held

(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*)

In an action alleging that decedent died as a result of his exposure to asbestos during his employment, the appellate court answered in the negative the certified question as to whether defendant railroad had a duty to the employees of the asbestos company where decedent worked to pick up unloaded boxcars upon the company's request in such a manner as to prevent the movement of asbestos fibers accumulated upon the boxcars from plant operations or warn such employees prior to moving the boxcars after the railroad had taken possession of the boxcars.

Decision Under Review

Appeal from the Circuit Court of McLean County, Nos. 05-L-117, 06-L-69, 07-L-204; the Hon. Scott Drazewski, Judge, presiding.

Judgment

Question answered; cause remanded.

Counsel on Appeal

Thomas R. Peters (argued), Mark R. Kurz, and Leslie Boyle Shinners, all of Boyle Brasher LLC, of Belleville, for appellant.

James Wylder (argued) and Andrew J. Kelly, both of Wylder Corwin Kelly LLP, of Bloomington, for appellee.

Panel

JUSTICE McCULLOUGH delivered the judgment of the court, with opinion.

Justices Appleton and Cook concurred in the judgment and opinion.

**OPINION**

¶ 1    This is an interlocutory appeal pursuant to Illinois Supreme Court Rule 308 (eff. Feb. 26, 2010). Defendant, Illinois Central Railroad Company, filed a motion to dismiss the complaint filed by plaintiff, Margaret Compton, individually and as special administratrix of the estate of Robert Compton, and the complaint filed by plaintiffs, John Monical, Patricia Monical, and Johnie Brown. The circuit court denied defendant's motions to dismiss and then certified the following question for our review: "Whether the defendant, Illinois Central Railroad Company, had a duty to the employees of an asbestos company to pick up unloaded boxcars upon the request of the asbestos company in such a manner as to prevent the

movement of asbestos fibers accumulated upon the boxcars from plant operations, or warn such employees prior to moving the boxcars after the railroad had taken possession of the boxcars." For the reasons that follow, we answer the certified question in the negative.

¶ 2 On December 28, 2007, petitioner Compton filed a complaint against defendant and others for the wrongful death of her husband, Robert Compton. The complaint alleged decedent worked at an asbestos plant operated by Union Asbestos & Rubber Company, later known as Unarco Industries, Inc. (Unarco). During his employment (April to June of 1961), decedent was exposed to asbestos. The complaint alleged decedent contracted asbestosis. Decedent died on September 14, 2007. Specific to defendant, the complaint alleged in counts IV, V, and VI that prior to and during the 1960s, defendant negligently transported asbestos to and from Unarco, and failed to warn decedent of the dangers posed by asbestos.

¶ 3 On May 31, 2006, plaintiffs John Monical, Patricia Monical, and Johnie Brown filed a complaint against defendant and others. The complaint alleged John Monical and Johnie Brown worked at an asbestos plant operated by Union Asbestos & Rubber Company, later known as Unarco. During their employment in the 1950s, Monical and Brown were exposed to asbestos. The complaint alleged Monical and Brown contracted asbestosis. Specific to defendant, the complaint alleged in counts III, IV, and VI that in the 1950s, defendant negligently transported asbestos to and from Unarco and failed to warn Monical and Brown of the dangers posed by asbestos.

¶ 4 On July 31, 2009, defendant filed an amended motion to dismiss counts IV, V, and VI of plaintiff Compton's complaint pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/2-619(a)(9) (West 2008)). On August 12, 2009, defendant filed an amended motion to dismiss counts III, IV, and VI of Monical and Brown's complaint pursuant to section 2-619(a)(9) of the Procedure Code (735 ILCS 5/2-619(a)(9) (West 2008)). In support, defendant argued that plaintiffs attempted to regulate interstate commerce through the judicial system in violation of the commerce clause of the United States Constitution (U.S. Const., art. I, § 8, cl. 3).

¶ 5 In response, plaintiffs stated that their complaints did not invoke commerce clause scrutiny because they alleged only that "*after* the railroad transported and delivered the asbestos, it negligently removed the empty railcars in such a manner that asbestos was emitted into the air in and around the plant." (Emphasis in original.) Further, defendant did not warn decedent and plaintiffs Monical and Brown of the hazards. Following a hearing, the trial court denied defendant's motions to dismiss.

¶ 6 On July 9, 2010, defendant filed a motion for a Rule 308 finding. On August 30, 2010, the court granted defendant's request and noted a Rule 308 order would be entered. On November 30, 2010, the court entered the written Rule 308 order, certifying the previously stated question.

¶ 7 Defendant timely filed applications for leave to appeal, which this court denied on January 20, 2011. Defendant then filed petitions for leave to appeal with our supreme court. On June 29, 2011, the supreme court denied defendant's petitions for leave to appeal and entered a supervisory order directing this court to accept the interlocutory appeals and consolidate the appeals, which this court did on July 7, 2011. *In re Estate of Compton*, No.

111945, 947 N.E.2d 770 (Ill. May 25, 2011) (nonprecedential supervisory order on denial of petition for leave to appeal); *Smith v. Pneumo Abex Corp.*, No.111944, 947 N.E.2d 770 (Ill. May 25, 2011) (nonprecedential supervisory order on denial of petition for leave to appeal).

¶ 8    Defendant argues it owed no duty to decedent, and plaintiffs Monical and Brown, to remove the unloaded boxcars in such a manner as to prevent the movement of asbestos fibers accumulated upon the boxcars from plant operations, or warn decedent and plaintiffs Monical and Brown, prior to moving the boxcars, and therefore cannot be held liable.

¶ 9    Whether a duty exists depends on whether the parties stood "in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 436, 856 N.E.2d 1048, 1057 (2006). Our supreme court has stated that whether a relationship exists justifying the imposition of a duty depends on the following four factors:

"(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Marshall*, 222 Ill. 2d at 436-37, 856 N.E.2d at 1057.

Whether a duty should be imposed involves considerations of public policy. *Marshall*, 222 Ill. 2d at 436, 856 N.E.2d at 1057; see also *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 303, 730 N.E.2d 1119, 1134 (2000) ("the existence of a duty turns in large part on public policy considerations").

¶ 10    Defendant points to other jurisdictions that have found no duty "in similar circumstances." See *Crockett v. Uniroyal, Inc.*, 772 F.2d 1524 (11th Cir. 1985); *Bergman v. U.S. Silica*, No. 06-CV-356-DRH, 2006 WL 2982136 (S.D. Ill. Oct. 17, 2006).

¶ 11    *Crockett* involved claims for personal injury and wrongful death caused by exposure to a poisonous pesticide while workers were cleaning empty tank cars that had transported a pesticide. Two rail carriers transported the empty tank cars from the manufacturer of the pesticide to the cleaning service. The plaintiffs sued the shipper of the pesticide and the two rail carriers, and the defendants filed cross-claims for indemnity or contribution. The Eleventh Circuit held:

"[A] carrier will be put to a duty to perform tasks within his expertise to insure the reasonable safety of transport and delivery. He will not, and should not, be required to examine information about the content of the shipment entrusted to him and warn the ultimate consignee of that shipment of any potential dangers arising from the nature of the cargo. We therefore hold that under the facts as presented the railroad defendants were not required to conclude the railcar was dangerous. There was therefore no duty to warn arising in them because of superior knowledge of the dangerous condition. Hence there was no negligence under this argument as a matter of law." *Crockett*, 772 F.2d at 1531.

¶ 12    In *Bergman*, the plaintiff brought claims of strict products liability, negligence, and breach of implied warranty against various manufacturers of "dangerous chemicals" and a trucking company that transported the products at issue from the manufacturers to the

-4-

plaintiff's employer. The plaintiff alleged his work environment caused him to be exposed to the dangerous chemicals, and this exposure allegedly caused the plaintiff's debilitating condition. The Southern District of Illinois found the trucking company provided a simple service, when needed, "to get the product from Point A to Point B." *Bergman*, 2006 WL 2982136, at *6. Further, the trucking company was not in a position to have knowledge of the safety or handling of the silica, other than its transportation. The trucking company did not load or unload the product. The district court found the trucking company "merely a peripheral party–not able to likely press upon the manufacturer to enhance the safety of this product." *Id.*

¶ 13      Specific to the plaintiff's negligence claim, the district court stated:

"In their memorandum, Plaintiffs assert that the basis for liability in negligence is based upon the 'duty of a manufacturer or seller of a product *** to exercise reasonable care in the distribution of and warnings given concerning the use of the product.' *** Thus, there must be an existing duty compelling Lotz Trucking to do something–in this case, to use reasonable care in distributing the silica and also to provide warning regarding the use of the silica. Determining whether such duty exists is a question of law, requiring the Court to examine such factors as: (1) whether it is reasonably foreseeable that the conduct of Lotz Trucking could cause injury to another in transporting the silica; (2) the likelihood of any injury occurring due to Lotz Trucking's transport of the silica; (3) the extent of the burden imposed upon Lotz Trucking to guard against such injury; and (4) the resulting consequences if such burden were imposed upon Lotz Trucking. *See City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 391, 821 N.E.2d 1099, 1125 (Ill. 2004).

Even Plaintiffs' own legal authority makes it evident that Lotz Trucking had no duty in this instance. The law cited by Plaintiffs imposes such duty upon a manufacturer or seller–not a peripheral transportation company. Plaintiffs have not offered supporting law or other legal argument to prove otherwise. Looking at the factors regarding the existence of a duty, Lotz Trucking cannot be reasonably expected to anticipate the injury as caused in this case–otherwise, it would be expected to anticipate the injuries for any and every product it may transport in the course of its business. That is clearly unreasonable and would present too great of a burden, especially when considering the fact that Lotz Trucking has no knowledge of what UGL intended to do with the silica once it was unloaded from its trucks by UGL employees. For these reasons, coupled with Plaintiffs' failure to show why such duty should exist, other than merely resting on their allegations and a couple of basic case cites regarding negligence in a products liability action, the Court finds no reasonable possibility that Plaintiff could state a successful claim of negligence against Lotz Trucking in an Illinois state court." (Emphasis omitted.) *Id.*

¶ 14      In the instant case, plaintiffs fail to cite any authority, either in Illinois or any other jurisdiction, establishing a duty to remove unloaded boxcars in such a manner as to prevent the movement of asbestos fibers accumulated upon the boxcars from asbestos plant operations or warn employees prior to removing the unloaded boxcars. Essentially, plaintiffs seek an order creating such a duty where no such duty exists. This court declines to create such a cause of action. Given our decision on this issue, we need not address defendant's

remaining arguments.

¶ 15    For the reasons stated, we answer the question of the McLean County circuit court finding a railroad engaged in transport and delivery of asbestos and asbestos-containing products owed no duty to employees of an asbestos company to remove unloaded boxcars in such a manner as to prevent the movement of asbestos fibers accumulated upon the boxcars from plant operations or warn employees prior to removing the unloaded boxcars.

¶ 16    Question answered; cause remanded.